# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RONALD A. PRICE, MARLA A. PRICE,
individually, and as personal representatives
of RICHARD PRICE, a minor deceased Child;
and BOBBY ADAMS, and CHARLENE
ADAMS

    **Plaintiff,**

v.             **Civ. No.  02-0684 LCS/LAM**

CITY OF LOVINGTON, a municipal
corporation, and BOB CARTER, individually,
and in his official capacity as LOVINGTON
CITY MANAGER, and CHARLES KELLEY,
individually, and as LOVINGTON ASSISTANT
CITY MANAGER, individually, and as
LOVINGTON ASSISTANT CITY MANAGER,
NAVAJO REFINERY CO., INC, and DAIRY
FARMERS OF AMERICA

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** is before the Court on Defendants City of Lovington, Bob Carter and

Charles Kelley's (hereinafter "Lovington Defendants"), Dairy Farmer's of America (hereinafter,

"DFA"), and Navajo Refinery's Motions to Dismiss, filed October 18, 2002 (Doc. 20),  October

28, 2002 (Doc. 23), and October 29, 2002 (Doc. 27) respectively, and upon Plaintiffs' Motion to

Extend Time by an Additional 15 Days Within Which to File an Amended Complaint, filed

December 2, 2002.  (Doc. 43) and Plaintiffs' Motion For Leave to File Amended Response, or in

the Alternative, For Order to Substitute Pages of Incomplete Response Brief (Doc. 68).   In

addition, the Court has considered Defendant Navajo Refinery's Motion to Strike Paragraphs 8,

1

10, and 13 of the Affidavits of Ronald A. Price and Marla Price (Doc. 91) and Defendant DFA's

Motion to Strike Portions of the Affidavits of Ronald A. Price and Marla Price (Doc. 97).  The

parties have each consented to having the United States Magistrate Judge conduct all further

proceedings in this case pursuant to 28 U.S.C. § 636 (c). The Court, having reviewed the

motions, the responses, the replies, the applicable law, and the interests of justice, finds that

Defendants' Motions to Dismiss are well-taken and should be **GRANTED** and that Count X of

the Complaint for Wrongful Death should be **DISMISSED WITH PREJUDICE.**  The Court

further finds that the Plaintiffs' Motions are not well-taken and should be **DENIED**.   Finally, the

Court finds that Defendants Navajo Refinery's and Defendant DFA's Motions to Strike should be

**DENIED AS MOOT.**

## I.    BACKGROUND

### A.    Factual Background

The following facts are set forth in the light most favorable to plaintiffs, and all well-

pleaded allegations of the Complaint are accepted as true.  FED. R. CIV. P. 12(b)(6).  Plaintiff

Ronald Price brings suit as personal representative of the estate of the deceased minor child,

Richard Price (hereinafter "Richard") (Compl. ¶54.)  Ronald Price was employed as a

maintenance foreman for the City of Lovington's (hereinafter "City") Waste Water Treatment

Sewage Plant (hereinafter "WWTP").  (Compl. ¶5.)  He was hired in 1982 as the sole

maintenance person, did not receive any safety training, did not receive any instructions on basic

precautions, and was never supplied with basic safety equipment.  (Compl. ¶23.)

Plaintiffs Bobby Adams and Charlene Adams are residents of Lovington, New Mexico.

(Compl. ¶¶7-8).  Bobby Adams is employed by the city of Lovington at the WWTP as a plant

maintenance worker and was named by the Defendants to act as "Safety Coordinator" for the City of Lovington. (Compl. ¶7).

Plaintiffs Ronald Price and Bobby Adams were not provided with any type of protective clothing to protect them from skin absorption from wastewater. (Compl. ¶28.) After work, Price and Adams would take off their work clothes in the halls, the bedrooms, and the bathrooms of their homes. (Compl. ¶42.) Both Ronald Price and Bobby Adams showered in their family community bathtubs. (Compl. ¶43.) Charlene Adams and Marla Price would wash their husbands' dirty work clothes in their family washing machines, which were used to wash all family clothing. (Compl. ¶45).

DFA constructed and operated a cheese plant and a whey factory, (hereinafter referred to as "the cheese plant") within the Lovington city limits. Plaintiffs allege that large amounts of whey, the primary by-product of the cheese making process, entered the waste stream from the operations of DFA. (Compl. ¶¶57-58.) The DFA waste stream was supposed to be initially discharged into a "lagoon" prior to entering WWTP's waste stream for pre-treatment. (Compl. ¶62.) Plaintiffs allege that the cheese plant never pre-treated its waste stream. (Compl. ¶70.)

Plaintiffs Ronald Price and Bobby Adams were required by the Defendants to service the cheese plant's waste equipment, often involving submersion in waste water chest- or chin-deep. (Compl. ¶63). During one maintenance operation, Ronald Price and Bobby Adams were observed immersed in lift station waste water repairing a pump by a DFA supervisor. (Compl. ¶64). Price and Adams were told by the supervisor not to go into the water, which had hazardous chemicals in it. (Compl. ¶65). Ronald Price thereafter contacted the City and Bob Carter, the City Manager, to learn why he had not been told of the danger of the chemicals in the previous

3

five years that he had been performing maintenance work.  (Compl. ¶66).  Price and Adams were provided with bio-hazard suits to use the following day.  (Compl. ¶67).  Carter denied the existence of any hazard in the lift station or in the WWTP waste water.  (Compl. ¶69).

Ronald Price developed itching and burning of his skin and dermatitis when he began working around the waste water.  (Compl. ¶¶75, 79).  Price also began to experience problems with his teeth and eyes, as did Adams.  (Compl. ¶¶75, 79, 96-100).  Bobby Adams began to suffer from headaches, as well as worsening eyesight, since beginning his employment.  (Compl. ¶80). When Price complained to Carter and to Charles Kelley, the Assistant City Manager, that something in the water was causing a burning sensation, he was told the water was not causing the burning sensation, or the burning sensation might be because someone put bleach into their toilet.  (Compl. ¶77-78).

Plaintiff Marla Price began to experience long term memory loss, joint and muscle pain, headaches, respiratory problems, fatigues, worsening eyesight, and other problems.  (Compl. ¶95).  Plaintiff Charlene Adams began to suffer from severe insomnia, chest tightness and shortness of breath, headaches, and other problems.  (Compl. ¶112).  Charlene Adams was diagnosed with precancerous cells on her cervix and developed small lesions on her hairline and neck.  (Compl. ¶113).

In May 1996, the decedent, Richard, started exhibiting symptoms of sickness.  (Compl. ¶82.)  Richard was diagnosed with colitis and PSC of the liver, a rare liver disease that occurs in adult, long term alcoholics.  (Compl. ¶83.)  Doctors performed numerous blood and other types of tests to determine the cause but were unable determine how Richard contracted this disease. (Compl. ¶83.)  Doctors could not treat the PSC condition and it worsened when Richard sat on

his father's lap or when the family rode in his father's work truck.  (Compl. ¶¶86-87.)  Plaintiff

Ronald Price said that when he came home, Richard's coughing fits would intensify and would

not lessen until he left.   (Compl. ¶93.)  Richard's condition improved somewhat when he was at

the hospital or when he and his family were out of town.  (Compl. ¶87.)  Richard also developed

white spots in his mouth and developed "water-like" blisters on his legs from his knees to his feet.

(Compl. ¶88.)  From October 1998 to December 1998, Richard had a total of three liver stints

implanted, and from November 1998 until his death, Richard was unable to attend school.

(Compl. ¶90.)  He was placed on a liver transplant list in January 1999.  (Compl. ¶89.)  Doctors

were unable to find a cause for his condition.  (Compl. ¶91.)  Richard died on June 12, 1999.

(Compl. ¶3.)

     After comparing sympcomes, Plaintiffs began to realize that the waste water was

contaminated and injurious to their health.  (Compl. ¶ 114.)  Plaintiffs learned of several other

persons who have medical problems, who worked or lived in areas near the waster water.

(Compl. ¶¶115, 115).

     Defendant Carter, the City Manager, completed an Employers First Notice of Accident

Workers Compensation Form, under the New Mexico Workers Compensation law, for Ronald

Price and Bobby Adams. (Comp. ¶102.)  Carter is on the Board of the New Mexico Workers

Compensation Administration.  (Compl. ¶106).The form was dated March 14, 2001, but was not

filed for several months.  (Compl. ¶103.)  The form stated that Ronald Price and Bobby Adams

were exposed to hazardous chemicals at the WWPT, at the lift stations, and at the cheese plant

lagoon.  (Compl. ¶104.)

     On July 9, 1998 a safety expert, F.L. "Roy" Miller,  informed Navajo Refinery that testing

had measured high levels of hydrogen sulfide gas (hereinafter "H2S") from the Navajo waste

stream.  (Compl. ¶147). Miller wrote to Navajo Refinery "to notify you that excessive orders and

petroleum products are detected at the discharge point of your refinery wastewater into the City

of Lovington's Wastewater Treatment Plant." (Compl. ¶149).  A copy was sent to the Lovington

defendants.  *Id*. A letter from Miller to Defendant Carter, the City Manger, also dated July 17,

1998 indicated that Miller was "working with Navajo and there may be a severe problem."

(Compl. ¶150).

 A field training specialist for New Mexico State University wrote to the Lovington

Defendants on August 2, 1999, regarding a recent evaluation of the WWTP and the condition of

the plant.  (Comp. ¶¶154-156).   The report of the evaluation noted that the WWTP "is aged and

in poor repair," noted various mechanical problems, staffing problems, and possible contamination

of the "sludge" produced by the plant.  (Compl. ¶¶157-159).  The report also noted a "nonchalant

additude (sic) toward safety" and recommended that the City "invest in the required safety

equipment and train the operators in its importance and proper use." (Compl. ¶162).

 On April 19, 2000, the New Mexico Environment Department, Ground Quality Bureau,

notified the City through a letter to Defendant Carter, that it was exceeding the acceptable levels

for various chemicals and total dissolved solids in 7 of its 10 monitoring wells.  (Compl. ¶163).

On March 7, 2001, Navajo Refinery notified the City, through a letter to Carter, that it was

exceeding benzene levels.  (Compl. ¶166).

 In 2001, the Lovington Defendants provided Plaintiffs Price and Adams with portable H2S

monitors, which kept going off when the Plaintiffs entered their work monitors. (Compl. ¶¶ 168-

169).  Although the Lovington Defendants promised Plaintiffs in writing to provide them with

benzene monitors, they have not provided such monitors.  (Compl. ¶170).  Plaintiff Bob Adams

submitted a report to the City in November 2001 in which he expressed concerns for the safety of

workers, asked for safety training and noted the continued needs for H2S and benzene monitors.

(Compl. ¶185-186).  Defendant Kelley responded by letter dated May 30, 2002, which indicated

that Adams would need to decide the best place for installation of H2S monitors, noted that the

only type of monitor for benzene was portable, and provided a listing of training classes by Safety

Counseling for Adams' review. (Compl. ¶187).  The Lovington Defendants arranged for an expert

to conduct tests of Navajo's influent into WWTP. (Compl. ¶190).  The tests were performed on a

day when the Navajo plant had shut down its waste stream discharge, and failed to find any type

of contaminant at Navajo's sewer conjunction with WWTP.  *Id.*

## B.    Procedural History

Plaintiffs filed their Complaint on June 13, 2002, alleging the violation of Plaintiffs' rights,

privileges, and immunities secured to them by both the Constitutions of the United States of

America and the State of New Mexico; violation of Federal and State statutory law; wrongful

death; conspiracy to violate Federal and State law and Plaintiffs' civil rights; infliction of

emotional and mental distress; intentional and deliberate maintenance of a public nuisance; and

personal injuries and damages, proximately caused by DFA through its reckless, grossly negligent,

negligent, deliberate and intentional acts, and omissions, concerning its maintenance and operation

of the City of Lovington's sewer system and the City Waste Water Treatment Facility.  (Compl.

¶1).

In their Complaint, Plaintiffs further allege that DFA intentionally, deliberately,

maliciously, wantonly, and outrageously, or in the alternative, negligently, allowed Ronald Price

to be exposed to poisons, and therefore allowed Richard Price to be exposed to poisons.  (Compl. ¶253.)  The Plaintiffs expressed suspicions about WWTP's role in Richard's disease after doctors were unable to determine a cause or find a cure for Richard's illness.  (Compl. ¶ 254.)  Plaintiffs further allege that DFA's actions and omissions deliberately, or in the alternative, negligently, caused Richard Price extreme pain and suffering and prevented medical doctors from properly treating and caring for him.  (Compl. ¶255.)

Plaintiffs also asserted claims against all of the Defendants under 42 U.S.C. § 1983. (Compl. ¶¶274-276.).  The Lovington Defendants filed a Motion for More Definite Statement Concerning Plaintiffs' Allegations of Violations of Federal Laws and Motion for Dismissal of Plaintiffs' 42 U.S.C. § 1983 Due Process Claim or, in the Alternative, Motion for a More Definite Statement on September 11, 2002. (Doc. 14).  On October 28, 2002, the Court entered an Order granting the Lovington Defendants' Motion to Dismiss Plaintiff's claims based on an alleged violation of 42 U.S.C. § 1983, and dismissed Count XIV of the Complaint as to the Lovington Defendants. (Doc. 25).   By its Order of October 28, 2002, Court also granted Defendants' Motion for a More Definite Statement with respect to Plaintiffs' environmental claims, specifically Count XI of the Complaint, and permitted Plaintiffs fourteen calendar days to file and Amended Complaint. *(See* Doc. 25).  The Order of the Court further provided that failure of the Plaintiffs to file an amended complaint within the specified time period would result in dismissal of Count XI of the Complaint as to the Lovington Defendants without prejudice.  The Plaintiffs failed to file their amended complaint, and as further noted below, failed to file a Motion to Extend Time by an Additional 15 Days Within Which to File an Amended Complaint until December 2, 2002. (Doc. 35), some 20 days after the expiration of the deadline set by the Court to file an amended

complaint.

Defendant DFA filed a Motion to Dismiss 42 U.S.C. § 1983 Due Process Claim of Plaintiffs, or Alternatively, Motion for More Definite Statement on September 18, 2002 (Doc. 17).  By Order of the Court entered November 13, 2002, the Court granted  DFA's Motion to Dismiss 42 U.S.C. § 1983 Due Process Claim of Plaintiffs, and dismissed Count XIV of Plaintiffs' Complaint as to Defendant DFA.  (Doc. 34).  The Court also granted DFA's Motion for a More Definite Statement with respect to Plaintiffs' environmental claims, specifically Count XI of the Complaint, and provided Plaintiffs with fourteen calendar days from the date of the Order, November 13, 2002, to file an amended complaint to provide a more definite statement as to the environmental claims.  *Id*.  The Order further provided that if Plaintiffs failed to replead their civil conspiracy claims under Count XIII of the Complaint, Count XIII would be dismissed with prejudice.  *Id*.  Plaintiffs failed to file an amended complaint within the period set forth by the Court, and instead waited until December 2, 2002 to file a Motion to Extend Time by an Additional 15 Days Within Which to File an Amended Complaint.  (Doc. 35).

The Court also granted summary judgment in favor of Navajo Refinery on Plaintiffs' claims under 42 U.S.C. §1983 on January 17, 2003 and dismissed Plaintiffs' claims under 42 U.S.C. §1983 against Defendant Navajo Refinery.  (Doc. 51).  Therefore, Count XIV has been dismissed with prejudice as to all Defendants.

Defendants DFA, City of Lovington, Bob Carter, Charles Kelley, and Navajo Refinery Co., moved the Court to dismiss all of Plaintiff's wrongful death claims set forth against them in the Complaint pursuant to FED. R. CIV. P. 12 (b)(6) on October 18, 2002, (Doc. 20), October 28, 2002, (Doc. 23), and October 29, 2002 (Doc. 27). Plaintiffs filed a Motion for Leave to File

Amended Response, or in the Alternative for Order to Substitute Pages of an Incomplete

Response Brief, asking that the Court permit Plaintiffs to either supplement their previous

Response filed to the Motions to Dismiss, or to file an amended response.  (Doc. 68).

## II.    STANDARD

Rule 12 (b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE provides that a party may

move the Court to dismiss a complaint for failure to state a claim upon which relief can be

granted.  FED. R. CIV. P. 16(b)(6).  When a claim is challenged under Rule 12(b)(6), the court

presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the

pleader's favor, and views the pleading in the light most favorable to the non-moving party.  *See*

*Albright v. Oliver*, 510 U.S. 266, 267 (1994); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir.

2002).  In accepting the allegations of the complaint as true, the court must consider whether the

complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted.

*Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y*, 163 F.3d 1150, 1152 (10th Cir.

1998).  "A complaint may be dismissed pursuant to FED R. CIV. P. 12 (b)(6) only if the plaintiff

can prove no set of facts to support a claim for relief."  *Gonzales v. City of Castle Rock*, 307 F.3d

1258, 1261 (10th Cir. 2002)(internal citation omitted).  However, "the FEDERAL RULES OF CIVIL

PROCEDURE erect a powerful presumption against rejecting pleadings for failure to state a claim."

*Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002)(citing *Cottrell, Ltd. v. Biotrol Int'l,*

*Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)).

## III.    ANALYSIS

### A.    Wrongful Death Act

Under New Mexico law, the right to recover damages for the wrongful death of a person

is entirely a statutory creation. *Baca v. Baca*, 71 N.M. 468, 473, 379 P.2d 765, 768 (N.M. 1963).

The New Mexico Supreme Court has described the wrongful death act as a survival statute which

"provides a cause of action for the benefit of the statutory beneficiaries to sue a tortfeasor for the

damages, measured by the value of the decedent's life, which the decedent himself would have

been entitled to recover had death not ensued." *Solon v. WEK Drilling Co.,* 113 N.M. 566, 568;

829 P.2d 645, ___ (N.M. 1992)(internal citations omitted).

### 1.    Statute of Limitations Applicable to Wrongful Death Act

The original statute of limitations applicable to a wrongful death action was one year. *See*

N.M. Stat. Ann. § 41-2-2 (2003) and related notes.   The New Mexico legislature amended the

statute of limitations in 1953, extending the limitations period to three years. N.M. Stat. Ann. §

41-2-2 (2003) ; *see also, Wall v. Gillett,* 61 N.M. 256, 298 P.2d 939 (1956).   The current statute

of limitations, N.M. Stat. Ann. § 41-2-2, provides that:

> Every action instituted by virtue of the provisions of this and the preceding section
> [N.M. Stat. Ann. §41-2-1, the Wrongful Death Act] must be brought within three
> years after the cause of action accrues. The cause of action accrues as of the date
> of death.

*See* N.M. Stat. Ann. §§ 41-2-1 and 41-2-2 (2003).  The limitation provision applicable to actions

for wrongful death is not only a limitation on the remedy but also on the right to institute such

action. *Wall*, 61 N.M. at 257, 298 P.2d at 940. The wrongful death act provides that the

limitation period begins running, as to the personal representative's cause of action, upon the

death of the injured person. *Stang v. Hertz Corp*., 81 N.M. 348, 350, 467 P.2d 14, ___ (1970).

The statute of limitations applicable to wrongful death acts has generally been strictly construed.

*See Natesway v.  Jojola*, 56 N.M. 793, 798, 251 P.2d 274, 278 (N. M. 1952)(noting "There is no

saving clause in the limitation provision of the death by wrongful act statute and the courts cannot

provide a saving clause or create an exception where the statute contains none.").  Upon the

expiration of the three year limitation period provided for in N.M. Stat. Ann. § 41-2-2, the right to maintain a suit for the alleged wrongful death of decedent under the wrongful death act terminated, or was thereafter barred. *See Perry v. Staver*, 81 N.M. 766, 769, 473 P.2d 380, 383 (N.M. Ct. App. 1970).

Defendants argue that the applicable statute of limitations bars the Plaintiffs' wrongful death action.   The New Mexico Supreme Court has noted that a "statute of limitations establishes the time, after a cause of action arises, within which a claim must be filed." *State ex rel. Public Emples. Ret. Ass'n v. Longacre*, 133 N.M. 20, _, 59 P.3d 500, 507 (N.M. 2002)(internal citations omitted). Limitations periods are meant to compel the exercise of a right of action within a reasonable time so that the party against whom the action is brought will have a fair opportunity to defend. *See generally, Public Emples.*, 133 N.M. at _, 59 P.3d at 507; *see also, Cummings v. X-Ray Assocs. of N.M, P.C.,* 121 N.M. 821, 832-33, 918 P.2d 1321, 1332-33 (N.M. 1996). Such statutes represent a policy judgment about the proper balance to be struck between competing considerations –the plaintiff's interest in validating her rights and the defendant's interest in repose and in not having to defense against stale claims. *Lujan v. Regents of the University of California*, 69 F.3d 1511, 1551 (10th Cir. 1995). As the Court noted in *Cummings*:

> An unduly long statute of repose, or a limit based upon a discovery-based accrual date would place an unfair burden upon the medical profession. Claims could arise long after memories have faded, parties become unavailable, and evidence is lost.. There must be a date that the cause of action expires. It is unavoidable that some individuals will be barred from recovery no matter what termination  point the legislature selects. A particular law is not rendered unreasonable or unconstitutional merely because its results are sometimes harsh.

*Cummings.,*  121 N.M. at, 832-33, 918 P.2d at 1332-33.

Accepting as true the well-pleaded allegations of the Complaint, it is apparent that Richard Price died on June 12, 1999.  Compl. ¶92.   The Complaint was filed on June 13, 2002.  *See* Doc.1.  Pursuant to the applicable statute of limitations, the wrongful death cause of action

accrued on June 12, 1999, the date of Richard Price's death.  N.M. Stat. Ann. § 41-2-2.  Plaintiffs were therefore required to institute their wrongful death action "within three years after" June 12, 2002.  *Id*.  Plaintiffs put forth four arguments in support of their contention that the statute of limitations had not elapsed at the time that they instituted their wrongful death action.  First, Plaintiffs argue that the statute of limitations was tolled under the doctrines of either fraudulent concealment or the discovery rule.  Second, Plaintiffs argue that the applicable statute of limitations should be calculated pursuant to Fed. R. Civ. P. 6, thereby allowing them until June 13, 2002 to institute their wrongful death action.  Third, Plaintiffs argue that they were told by their former attorney that he had attempted to file the Complaint before June 13, 2002, but as the Clerk of the Court improperly refused to accept the document for filing, the Court should deem the Complaint filed prior to June 13, 2002.  Finally, Plaintiffs argue that because the Court's jurisdiction over the wrongful death claim is based upon 42 U.S.C. § 1983, the applicable statute of limitations is New Mexico's personal injury statute of limitations, which provides a longer period in which to institute an action.

### 2.    Discovery Rule

Plaintiffs claim that the statute of limitations applicable to the wrongful death actions should be tolled by the discovery rule in this matter.  There are no New Mexico decisions directly on point, as the Supreme Court of New Mexico has never extended the discovery rule to wrongful death causes of action.  *See Lujan*, 69 F.3d at 1519.  In *Lujan*, the Tenth Circuit carefully examined New Mexico law and concluded that "[a]lthough there are no New Mexico decisions directly on point, we can anticipate how the New Mexico Supreme Court would resolve the issue by examining decisions from New Mexico and other jurisdictions that have considered several issues."  *Id*.  As noted above, New Mexico courts have strictly construed the statute of limitations applicable to wrongful death acts.  *See Natesway*, 56 N.M. at, 798, 251 P.2d at 27.  As the New Mexico Supreme Court noted,  "[t]here is no saving clause in the limitation provision of

the death by wrongful act statute and the courts cannot provide a saving clause or create an exception where the statute contains none." *Id*.  Similarly, the New Mexico Supreme Court declined to extend the period of limitations where the decedent was a minor, noting that  "[t]he minority of a decedent, who can be neither a proper party nor a beneficiary in a wrongful death action, should not effect the cause of action or inure to the benefit of an adult personal representative who is under no legal disability." *Regents of Univ. of N.M. v. Armijo,* 103 N.M. 174, 176, 704 P.2d 428, 430 (N.M. 1985).

In declining to extend the principle of discovery, the New Mexico Supreme Court remarked:  "[w]e are convinced that if the Legislature had intended the principle of discovery to apply to tort actions, it would have specifically so provided, as it did with regard to discovery in cases of fraud and in actions for injuries to or conversion of property." *Roybal v. White,* 72 N.M. 285, 287, 383 P.2d 250, 252 (N.M. 1963) (citing  *Lindquist v. Mullen,* 45 Wash.2d 675, 277 P.2d 724) (*overuled on other grounds by Roberts v. Southwest Community Health Servs,* 114 N.M. 248, 250, 837 P2d 442, 444 (N.M. 1992)). The Court further noted that "the fact that hardship may result can furnish no warrant for the courts to supply what the Legislature has omitted or to omit what it has inserted.."*Id*. (internal citations omitted).  In *Perry v. Staver*, the New Mexico Court of Appeals cited with approval an American Law Reports annotation which provided:

> In a majority of the jurisdictions it is held that provisions in statutes authorizing actions for wrongful death, which limit the time within which the actions shall be brought, are not properly statutes of limitations as that term is generally understood, but they are qualifications  and conditions restricting the rights granted by the statutes, and must be strictly complied with; and that no explanation as to why actions were not brought within the time limit will prevent the operation of such a provision of the statutes unless the statutes themselves contain a saving clause.

*Perry*, 81 N.M. at 770, 473 P.2d at 384 (citing 67 A.L.R. 1070 (1930)).

There is thus no basis in New Mexico law for this Court to extend the discovery rule.  The Plaintiffs correctly note that the applicable "statute begins to run from the accrual of the cause of action."  Pl. Response at 5.  However, N.M. Stat.Ann. § 41-2-2 specifically provides that "the

cause of action accrues as of the date of death."   N.M. Stat. Ann.§ 41-2-2.  This Court declines to revisit the question answered by the Tenth Circuit in *Lujan*.  An independent review of New Mexico case law demonstrates that the discovery rule does not apply to wrongful death actions. Moreover, the Court is not convinced that this matter should be certified to the New Mexico Supreme Court as requested by Plaintiffs, as the Tenth Circuit has already determined that "we can anticipate how the New Mexico Supreme Court would resolve the issue by examining decisions from New Mexico and other jurisdictions that have considered several issues." *Lujan*, 69 F.3d at 1519.  In *Cummings,* the New Mexico Court noted that "the limitations period can run on a potential malpractice claim before the claim even comes into existence. . . . It is irrelevant that the patient loses his or her malpractice claim through blameless ignorance." *Cummings,* 121 N.M. at 837, 918 P.2d at1337. The discovery rule thus provides no support for Plaintiffs' claim that the applicable statute of limitations ought to be tolled.

### 3.        Fraudulent Concealment

Plaintiffs argue that the doctrine of fraudulent concealment has tolled the applicable statute of limitations, specifically alleging that Defendants "have been engaged in affirmative, overt, and ongoing denials to Plaintiffs personally, and to the public in general" regarding the dangers of the waste water.  Pl. Response at 3.  Plaintiffs argue that because they only learned in 2001 of the (1) NMSU study and report indicating problems and inadequacies with the WWTP staffing and facilities (Compl. ¶¶154-162);  (2) of the Navajo written notices to the City indicating benzene discharges to the WWTP which were over the federal limit (Compl. ¶¶133-34,166);  (3) that Defendant Carter had filled out and signed an Employer's First Notice of Accident for Workman's Compensation dated March 14, 2001, which was filed several months later (Compl. ¶102);  (4) of the April 6, 2001 letter from the City attorney's to DFA about the hazardous material in their discharge to WWTP in violation of applicable City ordinance (Compl. ¶173); (5) that DFA had never pre-treated its waste stream discharge into WWTP (Compl. ¶¶ 70,129); and

(5) that the State had taken action against the city for its non-compliance with its discharge permit (Compl. ¶163-65).

It appears that Plaintiffs allege that Defendants concealed their knowledge of the presence of hazardous materials in the waste stream discharge processed by the WWTP.  Plaintiffs specific allegations relating to fraudulent concealment concern the "secret" completion of the Employer's First Notice of Accident for Workman's Compensation dated March 14, 2001, which Plaintiffs allege was filed several months later, and the Defendants' assurances that the waste water did not pose a threat to Plaintiffs (Compl. ¶102).[1]

The Wrongful Death Act does not contain any provision for tolling the statute of limitations for fraudulent concealment.  *See* N.M. Stat. Ann. § 41-2-1.  As noted in the Court's discussion of the discovery rule, the wrongful death act has generally been strictly construed.  *See Natesway*, 56 N.M. at 798, 251 P.2d at 278; *see also*, *Lujan*, 69 F.3d at 1519-21.  However, New Mexico has recognized the doctrine of fraudulent concealment in medical malpractice claims.

---

[1]     Other than Plaintiffs' bald allegation that the Notice was "secretly" filed, there is nothing in Plaintiffs' Complaint or the record to suggest that the filing of the Notice was fraudulently concealed.  New Mexico created the Workers' Compensation Administration as a state government entity to administer the Worker's Compensation Act.  N.M. Stat. Ann. § 52-5-1 (2003).  Under the New Mexico Public Records Act, public records are "all books, papers, . . . or other documentary materials . . . made or received by any agency in pursuance of law or in connection with the transaction of public business."  N.M. Stat. Ann. § 14-3-2(D)(2003). An agency is "any state agency, department, bureau, board, or any other commission, institution, or other organization of the state government."  N.M. Stat. Ann. § 14-3-2(D).  Because the Notice would have been filed with the Worker's Compensation Administration, a state agency, the Notice of Accident was a public record. *Id*. The Notice was, presumably, a matter of public record once it was filed.  Plaintiffs have not alleged that Defendants concealed the existence of any such public record.  In any case, Plaintiffs learned of their possible exposure to toxic substances sometime in March 2000 and they obtained information suggesting that Richard's death was related to exposure to toxic substances by April of 2001.  *See* Reply to Response to Motion to File Amended Response Ex. 2, ¶¶ 4-5. As such, even if the Notice was filed "several" months after March 14, 2001, Plaintiffs learned of their exposure to possibly hazardous substances and of their cause of action before the Notice was filed.

*Kern v. St. Joseph Hosp.*, 102 N.M. 452, 455, 697 P.2d 135, 138 (N.M. 1985).[2]   To toll the statute of limitations under the doctrine of fraudulent concealment, a plaintiff has the burden of showing (1) that the defendant knew of the alleged wrongful act and concealed it from the plaintiff or had material information pertinent to its discovery which he failed to disclose; *and* (2) that the plaintiff did not know or could not have know through the exercise of reasonable diligence of his cause of action within the statutory period.  *Id*. at 456, 697 P.2d at 139 (emphasis supplied).  Fraudulent concealment is a form of equitable estoppel.  *Id*.  Because equity tolls the statute, "it does so only as long as the [plaintiff] is not guilty of failing to exercise ordinary diligence in pursuit of a cause of action."  *Garcia v. La Farge*, 119 N.M. 532, 536, 893 P.2d 428, 432 (N.M. 1995).   In examining the *Kern* decision, the New Mexico Court of Appeals recently noted that "[i]mplicit in *Kern* is that tolling is not available when fraudulent concealment of the act of malpractice is discovered within the three-year period.."  *Tomlinson v. George*, ___ N.M. _ , __, 61 P.3d 195, 198 (N.M. Ct. App. 2003).  In cases where the period of fraudulent concealment extended for the entire three-year period provided by the applicable statute of limitations, the New Mexico Supreme Court has noted that the fraudulent conduct provided equitable grounds for relaxing the statutory time limit.  *See Cummings,*  121 N.M. at 836, 918 P.2d  at 1336.

   Under the view that a wrongful death statute creates an entirely new cause of action, a timely initiation of a wrongful death action is a condition precedent to the right of action itself, and thus, the beginning of the statutory period has been held not to be postponed by the defendant's concealment of the right of action.  *See generally,* 88 A.L.R.4th 851 (West 2003).  For example, various courts have found "the failure to disclose the causal connection between a latent

---

[2]        The New Mexico Court of Appeals specifically differentiated between the Wrongful Death Act and the Tort Claims Act with respect to the doctrine of fraudulent concealment.  *See Armijo v. Regents of Univ. of N.M.*, 103 N.M. 183, 187, 704 P.2d 437, 442 (N.M. Ct. App. 1985)(*rev'd in part on other grounds by Regents of Univ. of N.M. v. Armijo,* 103 N.M. 174, 704 P.2d 428 (N.M. 1985)).

injury or disease and exposure to a drug, or substance such as asbestos, did not constitute fraudulent concealment of the existence of a cause of action for wrongful death excusing the plaintiff's failure to bring the action within the period of limitations." 88 A.L.R.4th 851 §8 (internal citations omitted). In the instant case, Plaintiffs allege that Defendants concealed knowledge that hazardous materials were present in the waste water discharge from Navajo Refinery and DFA which was released into the waste stream and processed at the WWTP. However, the alleged fraudulent concealment must be considered in the context of Plaintiffs' wrongful death cause of action.

Plaintiff Ronald Price began to work at WWTP in 1983 (Compl. ¶23) and Plaintiff Bobby Adams began to work at WWTP in 1998 (Compl. ¶25). Plaintiff Price alleges that he was told that the water was filled with hazardous chemicals some five years after he had been performing this work. (Compl. ¶66). Plaintiffs claim that since beginning their employment, they began to suffer from various health problems. (Compl. ¶¶75, 76, 80). The decedent, Richard Price, became ill in May of 1996 and died on June 12, 1999 (Compl. ¶¶82, 92). Although Plaintiffs aver that at the time of Richard's death they had no reason to suspect that the death was related to Ronald Price's work at WWTP, sometime around March 2000, Plaintiffs Ronald Price and Bobby Adams were told by an employee of DFA that the wastewater contained hazardous materials. *See* Reply to Response to Motion to File Amended Response, Ex. 2 (hereinafter "Aff. of Ronald Price") ¶¶3-5; *see also,* Compl. ¶65. Some time after Richard's death, "the Price family began to suspect that Ron's work at WWTP could have been a factor and a cause in their Child's mysterious disease and in his death. They remembered that when Ron came home, the Child's 'coughing fits' would intesify, and would not lessen until Ron left the house." (Compl. ¶93). Plaintiffs further aver that they obtained information in April 2001 which lead them to believe that Richard's death was the result of exposure to toxic substances. Aff. of Ronald Price ¶4. Accepting as true these allegations set forth in the Complaint, it is apparent that the Plaintiffs suspected that Plaintiffs work at WWTP "could have been a factor and a cause" of Richard's death after the accrual of any

wrongful death action and prior to the expiration of the statute of limitations.  The very
allegations of Plaintiffs' Complaint indicate that Plaintiffs have failed to demonstrate the second
prong of the fraudulent concealment doctrine -- that the plaintiffs did not know or could not have
know through the exercise of reasonable diligence of their cause of action within the statutory
period.  *Kern*, 102 N.M. at 456, 697 P.2d  at 139.  Plaintiffs also bear the burden of
demonstrating that the Defendants knew of the alleged wrongful act and concealed it from the
plaintiff or had material information pertinent to its discovery which they failed to disclose.  *Id*.
Accepting all well-pleaded allegations in the Complaint as true, the Court cannot conclude that
Defendants knew that the alleged hazardous materials in the wastewater caused Decedent's illness
and subsequent death, nor is there anything to suggest that Defendants had information material
to the death of Plaintiffs' child and concealed it from the Plaintiffs. Equity tolls the statute, "it
does so only as long as the [plaintiff] is not guilty of failing to exercise ordinary diligence in
pursuit of a cause of action." *Garcia*, 119 N.M. at 536, 893 P.2d at 432.  Plaintiffs admit that
they suspected that Ronald Price's work at WWTP could have been a factor and cause of their
child's illness and death.  (Compl. ¶93).  Both Plaintiffs have described a myriad of health
problems which coincided with their work and contact with waste water; Ronald Price was told
that his teeth "were dying and rotting from the root outward, a classic case of exposure to toxic
chemicals." (Compl. ¶100). Plaintiffs note that at some undetermined point they confronted the
Lovington Defendants with information about their own and others' illnesses and their concern
that exposure to substances at WWTP "was what caused his son's death." (Compl. ¶117).
Plaintiffs were so concerned and convinced that the wastewater was contaminated and dangerous,
that they "began to video tape their work activities, and the wide spread [sic] contamination of the
City's inhabitants with the waste water." (Compl. ¶119-126).  While Defendant Carter denied the
existence of any hazard in either the lift station or in the waste water on several occasions, there is
nothing to suggest that Defendants fraudulently concealed information which would have
prevented the Plaintiffs from pursuing their wrongful death cause of action.  Indeed, Plaintiffs bear

the burden of diligently pursuing such action.  Plaintiffs admitted that by March 2000, they had

reason to believe that the waste water may have contained hazardous substances.  Aff. of Ronald

Price ¶5.  While Plaintiffs allege that they were assured that the wastewater was not dangerous,

Plaintiffs obtained information which led them to believe that Richard's death was the result of

exposure to toxic substances by April 2001.  *Id.* at ¶4.   The New Mexico Court of Appeals

recently noted with approval the concept "[i]mplicit in *Kern* [] that tolling is not available when

fraudulent concealment of the act of malpractice is discovered within the three-year period."

*Tomlinson*, ____ N.M. __, __, 61 P.3d at 198.  In any case, the New Mexico courts have not

specifically recognized the doctrine of fraudulent concealment in the context of wrongful death

claims.  Although I have accepted the Plaintiffs' well-pleaded allegations as forth in the Complaint

as true, and although I have made all inferences in favor of Plaintiffs, it is nevertheless apparent

that the doctrine of fraudulent concealment did not equitably toll the statute of limitations in this

matter.

### 4.      42 U.S.C. § 1983

In their Response to the Defendants' Motion to Dismiss, Plaintiffs claim that "[t]his

Court's jurisdiction over the wrongful death claim is by way of Section 1983, not Price-Anderson

[42 U.S.C. §§ 2014 and 2210]."[3]  Pl. Response to Def. Mot. to Dismiss at 4.  Plaintiffs argue that

---

[3]      Plaintiffs apparently argue that insofar as *Lujan* involves the Price-Anderson Act, it
is neither persuasive nor controlling.  *See Lujan,* 69 F.3d at 1518.  However, the applicable
portions of the *Lujan* decision deal with the Tenth Circuit's discussion of whether the discovery
rule applies to the statute of limitations under New Mexico law for wrongful death action.  *Lujan*,
69 F.3d at 1519-21.  While the Tenth Circuit in *Lujan* examined the application of "New
Mexico's three-year statute of limitations on wrongful death actions, as incorporated by Price
Anderson, 42 U.S.C. §2014(hh)," in the instant case, the statute of limitations on wrongful death
directly applies to the wrongful death claim asserted in Count X of Plaintiffs' Complaint.  *See*
N.M. Stat. Ann. § 41-2-2 (2002); Compl. ¶¶252-60.  The Court need not rely upon any federal
statute to incorporate a New Mexico statute of limitations as New Mexico law specifically
provides the applicable statute of limitations, N.M. Stat. Ann. § 41-2-2.  In any case, as noted
herein, Plaintiffs' 42 U.S.C. § 1983 claim has already been dismissed.  There is no federal cause of
action through which to graft any other state statute of limitations.

because their claim is premised on §1983, the applicable statute of limitations is the state's personal injury statute, N.M. Stat. Ann. § 37-1-8.

However, Plaintiffs argument is without merit.  First, the Court notes that the Court granted summary judgment and dismissed the Plaintiffs' claims against Navajo Refinery based on 42 U.S.C. § 1983 on January 17, 2003.  (Doc. 51).  On October 28, 2002, the Court entered an Order granting the Lovington Defendants' Motion to Dismiss Plaintiff's claims based on an alleged violation of 42 U.S.C. § 1983, and dismissed Count XIV of the Complaint as to the Lovington Defendants.  (Doc. 25).  By Order of the Court entered November 13, 2002, the Court granted  DFA's Motion to Dismiss 42 U.S.C. § 1983 Due Process Claim of Plaintiffs, and dismissed Count XIV of Plaintiff's Complaint as to Defendant DFA.  (Doc. 34).  As such, there are no remaining claims against any of the Defendants based on 42 U.S.C. § 1983.  There being no claims premised on §1983, it is apparent that there is no basis to argue that the wrongful death claims should be treated like a § 1983 claim, with the state's personal injury statute of limitations being applied instead of N.M. Stat. Ann. §41-2-2.  As noted previously in this opinion, the applicable statute of limitations is N.M. Stat. Ann. §41-2-2.  Plaintiffs' request that this Court apply the state's personal injury statute of limitations is without avail.

## 5.   FED. R. CIV. P. 6(a) and Computation of the Statute of Limitations

Plaintiffs argue that in computing the applicable time limit for instituting their wrongful death cause of action, the Court should apply FED. R. CIV. P. 6(a), which provides that "in computing any period of time prescribed or allowed . . . by any applicable statute, the day of the act . . . from which the designated period of time begins to run shall not be included."[4]   The

---

[4]        Plaintiffs' argument regarding FED. R. CIV. P. 6 was not raised in Plaintiffs' Response to the Motions to Dismiss.  As noted later in this opinion, Plaintiffs first raised this issue in the context of their Motion for Leave to File Amended Response.   Although the Court finds that Plaintiffs' Motion for Leave to File Amended Response is without merit (*see discussion below*), the Court has fully considered Plaintiffs' argument regarding FED. R. CIV. P. 6 in the interests of judicial economy.

applicable statute of limitations provides that a wrongful death cause of action accrues as of the date of death. N.M. Stat. Ann. § 41-2-2. Plaintiffs inexplicably argue that "Applying Rule 6, the three year statute of limitations does not begin to be calculated until June 13, 1999. Further, pursuant to Rule 6, the last day of the period, June 13, 1999, is to be included in the computation." Pl. Mot. to File Amended Response at 3. However, the terms of the statute are clear: the cause of action accrues on the same date as the death, not a day later. Moreover, the action "must be brought *within* three years after the cause of action accrues." *Id*. (emphasis supplied). There is no ambiguity as to either the time that the claim accrued or as to when the action must be filed. The claim thus accrued on June 12, 1999; Plaintiffs were required to institute their action no later than June 12, 2002.

An examination of New Mexico case law makes apparent that the New Mexico Supreme Court has similarly interpreted other statutes of limitations. *See, e.g., Marrujo v. New Mexico State Highway Transp. Dep't*, 118 N.M. 753, 756; 887 P.2d 747, 750 (N.M. 1994)(wherein the New Mexico Supreme Court noted that a wrongful death claim on behalf of a decedent who was injured on November 9, 1988, and who died on November 10, 1988, was filed "[t]wo years later on November 8, 1990--the final day of the statute of limitations for claims under the Tort Claims Act," which required such action to be commenced within two years after the date of occurrence resulting in loss, injury or death (citing N.M. Stat. Ann. § 4-14-15 (Repl. Pamp. 1989)); *Roberts v. Southwest Community Health Servs,* 114 N.M. 248, 250, 837 P2d 442, 444 (N.M. 1992)("[f]or those actions that are governed by the limitations provisions of the Act, the statute of limitations begins to run on the date that the malpractice occurred and expires three years from that date."); *Regents of Univ. of N.M. v. Armijo,*103 N.M. at 176, 704 P.2d at 430 (wherein the Court noted that the statute of limitations began to run on the date of a minor's death), and further noting that because the action was instituted more than three years after the infant's death, it was barred). In *Perry v. Staver*, the New Mexico Court of Appeals noted that where the decedent died on July 24, 1965,"[t]he right to institute a suit for the alleged wrongful death of decedent had expired on

22

July 24, 1968." *Perry,* 81 N.M. at 769, 473 P.2d at 383.  The Court will not use FED. R. CIV. P. 6(a) to modify the law of the State of New Mexico, nor will the Court use Rule 6 to reach a result contrary to the results reached by New Mexico's courts applying New Mexico law.  Plaintiffs' argument that FED. R. CIV. P. 6(a) allows their wrongful death claim to be instituted no later than June 12, 2002 is without merit.

### 6.    Plaintiffs' Claim That They Attempted to File Their Complaint Prior to June 13, 2002

In their Reply to the Defendants' Response to the Plaintiffs' Motion for Leave to File Amended Response, Plaintiffs come forward with *another* argument – that their former counsel did in fact attempt to file their Complaint on some undisclosed date prior to June 13, 2002.  This matter is discussed later in this opinion.  For the reasons noted below, the Court finds this argument without merit.

Accepting all the well-pleaded allegations of the Complaint as true and making all inferences in Plaintiffs' favor, it is nevertheless apparent that Plaintiffs' wrongful death claim was filed after the applicable statute of limitations had run.  In addition, it is apparent that none of the argued bases for tolling the statute are applicable.  Pursuant to FED. R. CIV. P. 12(b)(6), Plaintiffs have failed to state a claim for wrongful death.  Defendants' Motion to Dismiss is thus well-taken, and should be granted, and Count X of the Complaint should be dismissed with prejudice.

### B.    Plaintiffs' Motion for Extension of Time to File Amended Complaint

Pursuant to FED. R. CIV. P. 15(a), a party may only amend a pleading as a matter of course within 20 days of service of the pleading. FED. R. CIV. P. 15(a).   Thereafter, a party may only amend the party's pleadings by leave of the court.  *Id*. The court shall freely give such leave when justice requires.  *Id*.

Pursuant to the Orders of the Court entered on September 18, 2002 (Doc. 17) and on October 28, 2002 (Doc. 25), Plaintiffs were permitted fifteen (15) calendar days to file an

Amended Complaint, or face dismissal of certain claims.  Plaintiffs failed to file an amended

complaint by either of the deadlines set by the Court.  Plaintiffs did file a Motion for Extension of

Time in Which to File Amended Complaint on December 2, 2002 (Doc. 35), after both deadlines

had expired.

Plaintiffs thus failed to prosecute their case in several respects.  First, Plaintiffs failed to

Respond to the Motions to Dismiss or for More Definite Statement.  Second, Plaintiffs failed to

file an Amended Complaint within the requisite time period.  Third, Plaintiffs failed to file their

Motion for Extension of Time before the time elapsed to file their amended complaint.  In support

of their Motion, Plaintiffs allege that it is in the best interests of a speedy and just resolution of

this matter to allow them a 15 day extension of time.  While the Court notes that Plaintiffs' former

attorney was indeed very busy, the Court is perplexed as to why "the holiday season" would be

reason for failure to seek concurrence of opposing counsel.  *See* Pl. Mot. for Extension of Time at

¶8.  In addition, it is not at all clear that "[n]o prejudice will be caused to any party by granting

this extension." *Id.* at 9.  Plaintiffs have failed to demonstrate good cause for their failure to at the

very least file their Motion for Extension of Time in Which to File Amended Complaint before the

time for filing such amended complaint had elapsed.  In addition, the interests of justice do not

require that the Court permit Plaintiffs additional time to file an amended complaint.  The Court

finds that Plaintiffs' Motion is not well-taken, and should be denied.

**C.      Plaintiffs' Motion for Leave to File An Amended Response**

Plaintiffs have also filed a Motion for Leave to Amend a Response, or in the Alternative

for Order to Substitute Pages of an Incomplete Response Brief.  (Doc. 68).  In their Motion,

Plaintiffs sought leave of the Court to file an Amended Response to the various pending Motions

to Dismiss, claiming that the Plaintiffs' original response is incomplete and that the missing

portion "addresses a critical issue necessary to the proper determination of the Motion[s] to

Dismiss."

24

Upon examining the Response filed previously by Plaintiffs' it is not at all apparent that anything more than a case cite was omitted, much less "a critical issue necessary to the proper determination of the Motion[s] to Dismiss."   The Motions to Dismiss have been pending before this Court for some time, and much time has already been expended considering the motions in this case.  Moreover, Plaintiff's Motion was filed well after the filing of the Notices of Completion, and Plaintiffs' argument that the error was not discovered until March 8, 2003 during review of the case file by Plaintiffs' substituted counsel is not particularly persuasive.  Plaintiffs are reminded that the conduct of their counsel is imputed to them, even if Plaintiffs have since retained new counsel.

The Court notes that in order to preserve judicial economy, it would be in the best interests of the Court to address all dispositive issues in the most expedient manner, especially given the amount of time and judicial resources already expended in this matter.  The Court notes the general preference for disposal of matters upon the merits.  Moreover, the Defendants are entitled to have their Motions addressed in a timely fashion.  In the interests of judicial economy, however, the Court has considered the arguments which Plaintiffs seek to graft on to their already -filed Response.

Plaintiffs argue that  Rule 6 of the FEDERAL RULES OF CIVIL PROCEDURE changes the method that is used to compute the time frame for the statutes of limitations.  This issue, however, has been discussed already and Plaintiffs' argument is without merit.

Plaintiff have also sought to add *another* argument to their Response, an argument only raised in their Reply to the Defendants' Responses to Plaintiffs' Motion for leave to File Amended Response or in the Alternative to Substitute Page of Incomplete Response Brief.[5]   Plaintiffs claim

---

[5]       The Court is frankly perplexed at the constant adding of arguments to motions which have been fully briefed.  The parties are urged to consult the Local Civil Rules of the District of New Mexico, which set forth the applicable time period and method for filing Motions, Responses, and Replies. *See* D.N.M.L.R.-CV 7.1, 7.3, 7.6.

that they were told by their former attorney that he had attempted to file their Complaint on June 12, 2002, but that such Complaint "was turned away by the court clerk because it was a faxed copy which did not contain an original signature."  Pl. Reply Ex. 2 and 3. In their "Notice of Clarification of the Record" filed April 14, 2003 (Doc. 80), Plaintiffs note, however, that their former attorney  "denies that he attempted to file the Complaint prior to June 13, 2002." Plaintiffs concede that "[i]nformation regarding the attempted earlier filing of the Complaint was not included in Plaintiffs' initial response to Defendants' Motion to Dismiss the Wrongful Death Action."  In fact, this information was not even provided in Plaintiffs' Motion for Leave to File Amended Response or in the Alternative to Substitute Pages of Incomplete Response Brief which stated that the portion of the Response brief which was allegedly omitted "addresses application of Rule 6 of the Federal Rules of Civil Procedure to the computation of time to determine whether or not a statute of limitations has run on an action."  Pl. Mot. at 3.   As Defendant Navajo Refinery correctly notes, the Affidavits of Ronald Price and Marla Price submitted in support of their Reply in Response to the Motion for Leave to File Amended Response contains information which is not based on personal knowledge (i.e., allegations that the letters mailed from Navajo Refinery to the City of Lovington were "deliberately withheld and concealed" from Plaintiffs) and may contain inadmissible hearsay (i.e., assertions that the Plaintiffs were told by their former attorney that the attorney had tried to file the Complaint before June 13, 2002, but the documents were rejected by the Court Clerk). *See FDIC v. Oaklawn Aparmtents*,, 959 F.2d 170, 175 n.6 (10th Cir. 1992)("While Rule 56(e) addresses affidavits submitted in support of or in opposition to summary judgment motions, its requirements of personal knowledge, admissible facts, and affirmative showing of competency apply to affidavits submitted in support of or in opposition to motions to dismiss on jurisdictional grounds."). While the Court does not find these allegations admissible for any purpose, the Court has already considered these statements and notes that such statements are not persuasive and do not affect the Court's analysis of the Motions to Dismiss.  Accepting as true all well-pleaded allegations of the Complaint and making

all inferences in favor of Plaintiff, the Court has concluded that Plaintiffs have failed to state a claim for which relief may be granted.

It would not promote the interests of justice or judicial economy to infinitely allow a party to add new arguments to their pleadings. FED. R. CIV. P. 11(a) provides that "[e]very pleading . . . shall be signed by at least one attorney of record in the attorney's individual name. . . . An unsigned paper shall be stricken unless omission of the signature is correctly promptly after being called to the attention of the party." Moreover, D.N.M.L.R.-CV 5.4 only permits emergency fax filing for good cause shown and with the prior approval of a judicial officer. In addition, the Court is not persuaded by Plaintiffs' affidavits containing the hearsay statements attributed to their former attorney, which apparently have been disavowed by such attorney, that the Complaint was filed at any time before June 13, 1999, or that such attempt was made.

While the Defendants ought to be provided the opportunity to address the additional issues which Plaintiffs have brought before the Court by way of their Motion for Leave to File Amended Response as well as in their Reply to Defendants' Response to the same, the Court has found that Plaintiffs' additional arguments are without merit. Therefore, additional briefing by the Defendants on these arguments would not be helpful to the Court. The Court has carefully reviewed the merits of Plaintiffs' arguments, as well as the Amended Response attached to Plaintiffs' Reply as an Exhibit. The Court finds that Plaintiffs' Motion for Leave to File Amended Response or in the Alternative to Substitute Page of Incomplete Response Brief is not well-taken and should be **DENIED.** Moreover, although the matter is not yet fully briefed, as the Court has already considered the information alleged in the affidavits of the Price Plaintiffs submitted in support of their Reply in Response to the Motion for Leave to File Amended Response, Navajo Refinery's Motion to Strike Paragraphs 8, 10, and 13 of the Affidavit of Ronald A. Price and Marla Price (Doc. 91) is **DENIED AS MOOT**. In addition, Defendant DFA filed a similar Motion to Strike Portions of the Affidavits of Ronald A. Price and Marla Price on May 5, 2003

27

(Doc. 97). To the extend that such Motion similarly deals with Paragraphs 8, 10, and 13 of the Affidavits of Ronald A. and Marla Price, for the same reasons set forth above, such motion is also **DENIED AS MOOT**. With regard to DFA's Motion to Strike Paragraph 5 of the Affidavits of Ronald A. and Marla Price, the Court notes that it has already assumed the truth of this allegation solely for the purposes of the 12(b)(6) Motion to Dismiss. Therefore, the Court also finds that DFA's Motion with regard to Paragraph 5 of the Affidavits of Ronald A. and Marla Price should be **DENIED AS MOOT**. However, Defendants Navajo Refinery and DFA may renew their Motions to Strike the specified portions of the Affidavits of Ronald A. Price and Marla Price at a later time, should the issue arise again.

## CONCLUSION

I find that Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (Docs. 20, 23 and 27) are well-taken, and should be **GRANTED**, and that Count X of the Complaint should be **DISMISSED WITH PREJUDICE**. I further find that Plaintiffs' Motions to Extend Time to File an Amended Complaint (Doc. 43) is not well-taken and should be **DENIED**. I further find Plaintiffs' Motion for Leave to File an Amended Response (Doc. 68) is not well-taken and should be **DENIED**. I further find that Defendant Navajo Refinery's Motion to Strike (Doc. 91) should be **DENIED AS MOOT**. I further find that Defendant DFA's Motion to Strike (Doc. 97) should be **DENIED AS MOOT**. Moreover, I find that pursuant to the October 28, 2002 Order of the Court on the Lovington Defendants' Motion for a More Definite Statement, or in the Alternative, to Dismiss (Doc. 25), Count XI of the Complaint as to the Lovington Defendants should be **DISMISSED WITHOUT PREJUDICE**. I further find that pursuant to the Order of the Court on Defendant DFA's Motion for a More Definite Statement with respect to Plaintiff's environmental claims and with respect to Plaintiff's civil conspiracy claims, entered on October 28, 2002 (Doc. 34), Count XI of the Complaint should be **DISMISSED WITHOUT PREJUDICE;** and Count XIII of Plaintiffs' Complaint should be **DISMISSED WITH**

PREJUDICE.

IT IS, THEREFORE, ORDERED that Defendants' City of Lovington, Dairy Farmers of America, and Navajo Refinery Co.'s Motion to Dismiss filed October 18, 2002, (Doc. 20), and October 28, 2002, (Doc. 23), October 29, 2002 (Doc. 27), respectively, is **GRANTED;** Count X of the Complaint is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Time to File an Amended Complaint filed December 2, 2002 (Doc. 43) is **DENIED.**

IT IS FURTHER ORDERED that Plaintiffs' Motion For Leave to File an Amended Response, or in the Alternative, For Order to Substitute Pages of Incomplete Response Brief (Doc. 68), is **DENIED**.

IT IS FURTHER ORDERED that Defendant Navajo Refinery's Motion to Strike Paragraphs 8, 10, and 13 of the Affidavits of Ronald A. Price and Marla Price (Doc. 91) is **DENIED AS MOOT**.

IT IS FURTHER ORDERED  that Defendant DFA's Motion to Strike Portions of the Affidavits of Ronald A. Price and Marla Price (Doc. 97) is **DENIED AS MOOT.**

IT IS FURTHER ORDERED  that Defendants Navajo Refinery and DFA may renew their Motions to Strike should the issue arise later in this matter.

IT IS FURTHER ORDERED that pursuant to the Order of the Court on the Lovington Defendants' Motion for a More Definite Statement or, in the Alternative to Dismiss, filed October 28, 2003 (Doc. 25), Count XI of the Complaint as to the Lovington Defendants is **DISMISSED WITHOUT PREJUDICE.**

IT IS FURTHER ORDERED that pursuant to the Order of the Court on Defendant's Motion for a More Definite State with respect to Plaintiff's environmental claims and with respect to Plaintiff's civil conspiracy claims, entered on October 28, 2002 (Doc. 34), Count XI of the

Complaint  is **DISMISSED WITHOUT PREJUDICE;** and Count XIII of Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

        **IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**